ORIGINAL

# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| MORETHA HARDING, et al. | ) | Case No 3:06CV684 |
| Plaintiffs, | ) | CHIEF JUDGE JAMES G. CARR |
| vs. | ) | |
| CITY OF TOLEDO, et al. | ) | |
| Defendants. | ) | |

## DEFENDANTS CITY OF TOLEDO AND MAYOR CARLETON FINKBEINER'S MEMORANDUM IN OPPOSITION TO INJUNCTIVE RELIEF

Now come Defendants, City of Toledo and Mayor Carleton Finkbeiner, by and through counsel, and hereby submit their Memorandum in Opposition to Plaintiffs' Motion for Temporary Restraining Order and Preliminary and Permanent Injunctive Relief for the reasons more fully stated in the following Memorandum. This Memorandum is supported by an Appendix attached hereto, containing pertinent and undisputed Exhibits.

## MEMORANDUM

In their Complaint for Declaratory Relief, Preliminary and Permanent Injunctive Relief and Damages. Plaintiffs allege in paragraph 2:

> "* * * [Plaintiffs] seek declaratory relief, declaring that defendants' enforcement and application of repealed and current ordinances of the Toledo Municipal Code (TMC) restricting a group home comprised of disabled adults from being located within 500 feet of another 'group home' constitutes illegal discrimination. The plaintiffs seek an injunction enjoining the defendants from refusing to classify

1

the living arrangements of the disabled plaintiffs as a 'household' as required by ordinances of the City of Toledo. Such classification would permit plaintiffs to live as any other 'normal' household in Toledo. Plaintiffs also seek an injunction enjoining the defendants from refusing to grant a reasonable accommodation to the disabled plaintiffs. In addition, plaintiffs seek damages." (See Compl., ¶2.)

This case arises from a Toledo Municipal Housing Court prosecution brought against Defendant Doukides Properties LLC, which is the property owner of a residential structure at 3842 Talmadge Road, Toledo, Ohio. An adult group home is operated there by Plaintiff Moretha Harding pursuant to a State of Ohio, Ohio Department of Health license. The state-licensed adult family home at 3842 Talmadge Road is within 500 feet of another state-licensed home at 4225 Graceway Avenue, Toledo, Ohio.

On or about December 9, 2005, Defendant Doukides pled "no contest" in Housing Court to a violation of the City's zoning code pertaining to group homes. (See Toledo Municipal Code Section 1117.01.) In a Judgment Entry dated March 3, 2006, Housing Court Judge McConnell found Doukides guilty and imposed 30 days' incarceration and a fine of $2,000.00 plus costs. (See Appendix, Exhibit A, attached hereto.) However, he stayed this sentence until April 13, 2006. Judge McConnell's Order also states, in pertinent part:

"The defendant [Doukides] is further ordered to discontinue any and all zoning violations at 3842 Talmadge Road, Toledo, Ohio. This order is effective immediately and the defendant is ordered to pursue legal remedies to correct the violations. If it is necessary for the defendant to initiate legal action, the defendant should also engage in cooperative efforts with the leaseholder to find other accommodations for the residents." (See Ex. A, attached hereto.)

In this case there is no dispute that Plaintiff Moretha Harding is operating an adult family home for five (5) residents pursuant to a license from the State of Ohio, Ohio Department of Health. (See Appendix, Exhibit B, pp.1-2, attached hereto.)

2

Further, the City's current zoning code section which contains the spacing or distancing requirements for group homes specifies that the minimum distance between any two dwellings used for congregate living arrangements among non-related persons is to be 500 feet. Previously, the City's zoning code specified 990 feet as the required distance. However, on March 24, 1999, Judge Katz entered a Settlement and Agreement Order in *Advanced Living v. City of* Toledo, U.S. District Court Case No. 3:97CV7245, a consolidated case involving three lawsuits, in which, among other things, the City agreed to amend the spacing requirements for group homes in its zoning code. (See Exhibit C, attached hereto.) In the Memorandum of Understanding attached to Judge Katz' Settlement Agreement and Order, there are five (5) stipulations acknowledged and agreed to by the City of Toledo and the plaintiffs in that case. The spacing requirement is contained in the second stipulation as follows:

> "2. The spacing requirements found at T.M.C. §§1117.01(i)8, 1123.01(a)(6)I, 1167.01(b)(23)(F), and 1167.01(b)(26)(E) specifying the minimum distance between any two dwellings used for congregate living arrangements among non-related persons with disabilities, including a 'Group Home' and another 'Group Home' or 'temporary care residence,' or 'halfway house,' or 'adult family care home,' or drug or alcohol rehabilitation facility, or a similar group home type facility for persons with disabilities, *shall be amended to require five hundred foot (500') distancing.*" See Exhibit C, Memorandum of Understanding, p. 2 (emphasis added).

The Court should also note that one of the signatories to the March 1999 Settlement Agreement and Order was Plaintiff's counsel herein, ABLE, who represented the Association for Retarded Citizens in one of the consolidated cases, Case No. 3:97CV7291. (See Exhibit C.)

While Plaintiffs cite *Larkin v. State of Michigan, Dept. of Soc. Serv.* (6th Cir. 1996), 89 F.3d 285, that decision has no application here. In *Larkin*, the Sixth Circuit invalidated a Michigan statute which prevented the operation of residential facilities for retarded adults within *1,500 feet* of another similar institution. *Larkin* was a 1996 decision which predated Judge Katz'

Order in the consolidated cases involving the City and the issue of its spacing requirements for group homes under the municipal zoning code. As noted, due to Judge Katz' ruling, the City reduced its spacing requirement from 990 feet to 500 feet, or 1/3 of the distance which the Sixth Circuit invalidated in the *Larkin* case. Thus, the City's current 500-feet spacing requirement for adult group homes under its zoning code is much shorter than the one struck down in *Larkin*.

Further, the 500-foot requirement was implemented by legislatively amending the City's zoning ordinance in order to comply with Judge Katz' Order of March 24, 1999. In effect, Judge Katz' ruling, three years after the *Larkin* decision, constitutes a *judicially-approved* spacing requirement for adult group homes under the City's zoning code. Here, Plaintiffs are effectively asking this Court to revisit Judge Katz' decision. Accordingly, the Sixth Circuit's ruling in *Larkin* has no application to the undisputed facts involving the City's 500-foot spacing provision for adult group homes under Toledo's present zoning code.

When determining whether to grant a preliminary injunction, a district court must consider: (1) the plaintiff's likelihood of success on the merits, (2) whether the plaintiff may suffer irreparable harm absent the injunction, (3) whether granting the injunction will cause substantial harm to others, and (4) the impact of an injunction upon the public interest. See *Tucker v. City of Fairfield, Ohio* (6th Cir. 2005), 398 F.3d 457, 461; *Déjà Vu of Nashville, Inc. v. Metro Gov't. of Nashville & Davidson Cty.* (6th Cir. 2001), 274 F.3d 377, 400.

In this case, the Plaintiffs cannot prove their discrimination claim as to the 500-foot requirement pertaining to group homes. The distancing requirement at issue here was incorporated into the current zoning code pursuant to Judge Katz' ruling in March of 1999. It is merely one-third of the distance found objectionable by the Sixth Circuit three years earlier in *Larkin*. Thus, the Plaintiffs' likelihood of success at trial is very slim. Were the Court now to

4

invalidate Toledo's 500-foot distancing requirement for adult group homes, by granting injunctive relief, this would cause substantial harm to members of the public who reside in single-family households along Talmadge Road. Further, the fourth factor, concerning the impact of injunctive relief upon the public interest, is substantial. If the Court enjoins or otherwise invalidates the City's 500-foot distancing requirement between adult group homes, this will leave the City with no means of regulating the spread of such facilities. This would impact single-family residences in any neighborhood or residential area where an operator chose to place group homes. Obviously, the City has a substantial interest in regulating the location, number and proximity of such facilities in its residential areas.

Finally, there is again no dispute that Plaintiff Harding is operating an adult family home pursuant to a license from the State of Ohio, Ohio Department of Health, for the home at 3842 Talmadge Road. Ohio Revised Code Section 3722.03(D)(1) already allows municipalities to limit the "excessive concentration" of adult family homes within its jurisdiction. Under Toledo Municipal Code Section 1116.0220, entitled Group Living, an "Adult Family Home" is defined as follows:

"A state-licensed home or facility that provides accommodations to three to five unrelated adults and supervision and personal care services to at least three of those adults. Revised Code Sec. 3722.01(A)(7)."

Because Plaintiff Harding's facility at 3842 Talmadge Road is a state-licensed "adult family home," her operation is subject to the 500-foot distancing requirement of Toledo's zoning code for adult group homes. Plaintiff now wishes to be called a "household" so as to evade that distancing requirement. However, holding a state license for operating the facility as an "adult family home" is inconsistent with Plaintiffs' desire to be just another "household," except as a

5

convenient means to evade the current distancing requirement for such facilities. Plaintiffs cannot have it both ways.

**CONCLUSION**

Neither Plaintiffs' Complaint nor the undisputed facts involved in this case support their claims for temporary, preliminary or permanent injunctive relief against Defendants City of Toledo and Mayor Finkbeiner. Accordingly, and based upon the foregoing law and arguments, said Defendants respectfully request the Court to dismiss the Plaintiffs' claims for a temporary restraining order as well as for preliminary and permanent injunctive relief against enforcement of the City's 500-foot spacing requirements for adult group homes.

Respectfully submitted,

John T. Madigan (0023614)
Acting Director of Law

Mark S. Schmollinger (0025239)
Senior Attorney
City of Toledo Department of Law
One Government Center, Suite 1710
Toledo, Ohio 43604
Telephone: 419-245-1020
Facsimile: 419-245-1090
email: mark.schmollinger@toledo.oh.gov

Counsel for Defendants City of Toledo
and Mayor Carleton Finkbeiner

## CERTIFICATION

I hereby certify that a copy of the foregoing was sent by first-class U.S. Mail to counsel for Resident Plaintiffs, Richard Alston, Esq., ABLE, 520 Madison Ave., Suite 740, Toledo, Ohio 43604; counsel for Plaintiff Moretha Harding, Janet E. Hales, Esq., 900 Adams St., Toledo, Ohio 43624-1508; counsel for Plaintiff Rosalie Reynolds, Joseph P. Jordan, Esq., 4127 Monroe St., Toledo, Ohio 43606-2063; and counsel for Doukides Properties, LLC, Jerome R. Parker, Esq., 806 Madison Ave., Suite 930, Toledo, Ohio 43604-1128, on this _____ day of March, 2006.

Mark S. Schmollinger

# APPENDIX

IN THE MUNICIPAL COURT OF TOLEDO, LUCAS COUNTY, OHIO
VALLIE BOWMAN-ENGLISH

| | | |
|---|---|---|
| City of Toledo, | * | Case No. CRB-05-12427 |
| Plaintiff, | * | |
| vs. | * | Judge C. Allen McConnell |
| Doukides Properties, Ltd., | * | **JUDGMENT ENTRY** |
| Defendant. | * | |

This matter came before the Court on March 3, 2006 for sentencing. The Defendant entered a plea of No Contest with a finding of guilty on December 9, 2005.

The sentence of the Court is that Defendant is ordered to serve thirty (30) days and a fine of $2,000 plus costs is imposed. This sentence is stayed until April 13, 2006.

The Defendant is further ordered to discontinue any and all zoning violations at 3842 Talmadge Road, Toledo, Ohio. This Order is effective immediately and the Defendant is ordered to pursue legal remedies to correct the violations. If it is necessary for the Defendant to initiate legal action, the Defendant should also engage in cooperative efforts with the leaseholder to find other accommodations for the residents.

Case continued to April 13, 2006 at 9 a.m. in Courtroom # 2.

Date:   March 3, 2006

C. Allen McConnell, Judge

EXHIBIT
A

# Vallie Bowman-English

Clerk

## Toledo Municipal Court

555 North Erie
Toledo, OH 43624
(419) 936-3650

### Certified Journal Report

| | |
|---|---|
| CITY OF TOLEDO | Judge: MCCONNELL, C. ALLEN |
| Vs. | Prosecutor: CITY OF TOLEDO |
| DOUKIDES, PROPERTIES LTD-AN-OH-LTD-CO | |
| | Clerk of Court: Vallie Bowman-English |
| Plea: PLEA3-NO CONTEST | Attorney for Defendant: |

Case:   CRB-05-12427-0101     Section:     TMC  1117.011     SINGLE FAM RES USES/GROUP HOMES
Dfndt:   DOUKIDES, PROPERTIES LTD-AN-OH-LTD-CO     RID:   55774478

| Activity Date | Activity Record |
|---|---|
| 05/25/2005 | Affidavit Filed 05/25/2005 08:59. Defendant issued a summons and ordered to appear for arraignment on 08/10/2005 09:00 in court room 2.<br>Clerk entry.   Journalized on: 07/05/2005 09:16 By: TMCLHUNT |
| 07/13/2005 | Certified Mail sent <07/13/05>, certified mail number <7005 1160 0000 8932 5829>.<br>Clerk entry.   Journalized on: 07/20/2005 08:54 By: TMCLHUNT |
| 08/10/2005 | Defendant enters plea of not guilty.  To Assignment commissioner for date.<br>JUDGE MCCONNELL.   Journalized on: 08/11/2005 16:42 By: TMCLSCHW |
| 08/10/2005 | I hereby voluntarily and expressly waive my constitutional right to a speedy trial and to have this case tried within the time prescribed in ORC 2945.71.  On 08/10/2005 Signature of Defendant's Attorney on case.   Journalized on: 08/11/2005 16:43 By: TMCLSCHW<br>Case assigned to JUDGE MCCONNELL.   Journalized on: 08/11/2005 16:43 By: TMCLSCHW<br>Not a Draw.   Journalized on: 08/11/2005 16:43 By: TMCLSCHW<br>Case set for PROSECUTOR PRETRIAL on 09/28/2005 13:50 in courtroom 2.<br>Clerk entry.   Journalized on: 08/11/2005 16:43 By: TMCLSCHW |
| 08/10/2005 | AT THE REQUEST OF THE ASSIGNMENT COMMISSION OFFICE.  Clerk to issue notice for OFFICER  to appear on 09/28/2005 13:50 in courtroom 2.<br>Clerk entry.   Journalized on: 08/11/2005 16:43 By: TMCLSCHW |
| 08/11/2005 | Appearance Notice form printed on 08/11/2005 16:43 by user SCHWARTZ,JULI on station 36.<br>Clerk entry.   Journalized on: 08/11/2005 16:43 By: TMCLSCHW |
| 09/28/2005 | Prosecutor pre-trial held.  Case to A/C to set trial date.<br>JUDGE MCCONNELL.   Journalized on: 10/13/2005 09:46 By: TMCLSCHW |
| 09/28/2005 | Case set for TRIAL on 12/09/2005 08:30 in courtroom 2.   Journalized on: 10/13/2005 09:47 By: TMCLSCHW<br>Complainant notified by regular mail on 09/28/2005.<br>Clerk entry.   Journalized on: 10/13/2005 09:47 By: TMCLSCHW |
| 09/28/2005 | response to discovery filed by prosecutor.<br>Clerk entry.   Journalized on: 10/14/2005 12:47 By: TMCLHOWA |
| 12/09/2005 | Defendant withdraws prior plea.<br>JUDGE MCCONNELL.   Journalized on: 12/12/2005 15:12 By: TMCLMITC |

# Vallie Bowman-English

Clerk

## Toledo Municipal Court

555 North Erie
Toledo, OH 43624
(419) 936-3650

## Certified Journal Report

| | | |
|---|---|---|
| CITY OF TOLEDO | Judge: | MCCONNELL, C. ALLEN |
| Vs. | Prosecutor: | CITY OF TOLEDO |
| DOUKIDES, PROPERTIES LTD-AN-OH-LTD-CO | | |
| | Clerk of Court: | Vallie Bowman-English |
| Plea: PLEA3-NO CONTEST | Attorney for Defendant: | |

| | |
|---|---|
| 12/09/2005 | Defendant enters plea of no contest.<br>JUDGE MCCONNELL.   Journalized on: 12/12/2005 15:12 By: TMCLMITC |
| 12/09/2005 | Defendant found guilty by judge.<br>JUDGE MCCONNELL.   Journalized on: 12/12/2005 15:12 By: TMCLMITC |
| 12/09/2005 | Case reset for HEARING on 01/11/2006 13:30 in courtroom 2.<br>JUDGE MCCONNELL.   Journalized on: 12/12/2005 15:12 By: TMCLMITC |
| 01/11/2006 | Case continued to 02/23/2006 13:30 in courtroom 2. Final continuance.<br>JUDGE MCCONNELL.   Journalized on: 01/11/2006 16:10 By: TMCLHUNT |
| 02/23/2006 | Case continued. Pre-trial to be held - 03/03/2006 13:30 in courtroom 2..<br>JUDGE MCCONNELL.   Journalized on: 02/28/2006 14:53 By: TMCLHUNT |
| 03/03/2006 | Defendant sentenced to pay $2,000.00 fine and $79.00 costs.   Journalized on: 03/17/2006 11:37 By: TMCLHUNT<br>Defendant sentenced to 30 days. Case set for STAY ON DAYS until 04/13/2006.   Journalized on: 03/17/2006 11:37 By:<br>TMCLHUNT<br>Case set for STAY ON FINE AND/OR COSTS until 04/13/2006.   Journalized on: 03/17/2006 11:37 By: TMCLHUNT<br>Case set for STAY ON DAYS on 04/13/2006 00:00 in CLERKS OFFICE.<br>JUDGE MCCONNELL.   Journalized on: 03/17/2006 11:37 By: TMCLHUNT |
| 03/03/2006 | Case continued to 04/13/2006 09:00 in courtroom 2..<br>JUDGE MCCONNELL.   Journalized on: 03/17/2006 11:40 By: TMCLHUNT |
| 03/03/2006 | See Judgment Entry.<br>JUDGE MCCONNELL.   Journalized on: 03/17/2006 11:42 By: TMCLHUNT |

I, Vallie Bowman-English, Clerk of The Toledo Municipal Court, do hereby certify that the foregoing is a true and correct copy of the Journal
Entry made in the above entitled cause as appears on record.
Given under my hand and seal of this court this 27 day of March, 2006.

*Vallie Bowman-English*

By KOLBE,CARMEN
Deputy Clerk

# STATE OF OHIO
# OHIO DEPARTMENT OF HEALTH

## ADULT FAMILY HOME LICENSE

Hereby issued in accordance with Chapter 3722. of the Ohio Revised Code and Chapter 3701-20 of the Ohio Administrative Code to:

## MORETHA'S ACF #2
## 3842 TALMADGE ROAD
## TOLEDO, OH

Facility ID #:      **2594AFH**

Capacity:          **5 Residents**

Effective Date:    **October 18, 2004**

Expiration Date:   **October 18, 2006**

In witness thereof_____

J. Nick Baird, MD
Director of Health



This is a non-transferable license and must be posted in a conspicuous place in the facility.

EXHIBIT
B

tabbies

# OHIO DEPARTMENT OF HEALTH



246 North High Street
Post Office Box 118
Columbus, Ohio 43216-0118

Telephone: (614) 466-3543
www.odh.state.oh.us

BOB TAFT
Governor

J. NICK BAIRD, M.D.
Director of Health

October 22, 2004

Moretha Harding
MORETHA'S ACF #2
4225 GRACEWAY DR.
TOLEDO, OH  43606

Facility Type:  ADULT FAMILY HOME
Facility ID #:  2594AFH
Capacity:  5 residents
Effective Date of License:    10/18/2004
Expiration Date of License:   10/18/2006

Dear Ms. Harding:

This letter and enclosed license approves your request to operate the facility below
provided the facility continues to be in compliance with the requirement of Chapter
3722. of the Ohio Revised Code.

MORETHA'S ACF #2
3842 TALMADGE ROAD
TOLEDO, OH  43606

You will receive an invoice from our revenue processing unit for an inspection fee
of ten dollars for each bed for which the facility is licensed. Failure to pay the
bed inspection fee within thirty days may result in the revocation of your adult
care facility license.

For online information regarding the licensure process, e.g. rules/regulations (Ohio
Administrative Code (OAC) and the Ohio Revised Code (ORC), visit the Ohio Department
of Health web site at http://www.odh.state.oh.us.  Further questions regarding the
licensure process may be directed to our e-mail address at liccert@odh.ohio.gov, or
by calling a licensure specialist at (614) 466-7713.

Sincerely,

Bridgette C. Smith, Licensure Program Administrator
Division of Quality Assurance
Bureau of Information and Operational Support

enclosure

cc:  Adult Care Toledo District Office
     file

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| ADVANCED LIVING, INC., on behalf of itself and all others similarly situated, | ) ) ) | No. 3:97CV7245 |
| Plaintiffs, | ) ) | The Hon. David A. Katz |
| v. | ) ) | |
| CITY OF TOLEDO, et al., | ) ) | |
| Defendants | ) ) | |
| FAMILY TREE HOME, LTD., | ) ) ) | |
| Plaintiff-intervenor | ) ) | Consolidated with |
| ASSOCIATION FOR RETARDED CITIZENS, ("ARC") et al., | ) ) | No. 3:97CV7291 |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| CARLETON FINKBEINER, et al., | ) ) | |
| Defendants. | ) ) | |
| | ) | Consolidated with |
| UNITED STATES OF AMERICA, | ) ) | |
| Plaintiff | ) ) | No. 3:98CV7516 |
| v. | ) ) | |
| CITY OF TOLEDO, OHIO, et al., | ) ) | |
| Defendants. | ) ) | |

EXHIBIT
C

## SETTLEMENT AGREEMENT AND ORDER

The parties agree to the entry of this Settlement Agreement and Order to resolve the above actions.

## I. INTRODUCTION

1. Plaintiff Advanced Living, Inc., an adult residential care facility, filed its action on behalf of itself and a class of similarly-situated persons against the City of Toledo and the Toledo City Council (hereinafter "City") challenging the City's alleged pattern or practice of discrimination against adult residential care facilities for persons with disabilities in violation of the Fair Housing Act, 42 U.S.C. § 3604, the Rehabilitation Act, 29 U.S.C. § 794, the Civil Rights Act of 1871, 42 U.S.C. § 1983, the Fourteenth Amendment, and O.R.C. § 4112. Family Tree Home, Ltd., another adult residential care facility, intervened in the Advanced Living case. Class certification has been denied by the Court.

2. Plaintiffs Association for Retarded Citizens and Consumers' Union of Lucas County filed their action against the City of Toledo, the City Council, Carleton Finkbeiner in his official capacity as mayor of Toledo, and the Toledo-Lucas County Plan Commission alleging violations of the Fair Housing Act of 1988, the Rehabilitation Act of 1974, the Civil Rights Act of 1981, the Americans with Disability Act, the Equal Protection Clause of the United States Constitution, and the Ohio Civil Rights Statute (O.R.C. § 4112). Plaintiffs, organizations comprised primarily of persons who have disabilities, allege in their complaint that the defendants' enforcement of certain provisions of the Toledo Municipal Code governing "group homes" constitutes illegal discrimination.

- 2 -

3. Plaintiff United States brought its action against the City of Toledo and Toledo City Council on September 2, 1998, pursuant to section 814 of the Fair Housing Act, 42 U.S.C. § 3614, on referral by the Department of Housing and Urban Development (HUD) of two complaints that the defendants had engaged in discriminatory zoning practices against persons with disabilities. See 42 U.S.C. § 3610(g)(2)(C). The HUD complaints were filed by Advanced Living, Inc., and Family Tree Home, Ltd. The United States' complaint alleged that the City required Advanced Living and Family Tree Home to obtain special use permits to operate their homes, and that it violated the Fair Housing Act by doing so, because a similar group of persons without disabilities living together as a family unit would not have been required to seek a permit.

The United States further alleged in its complaint that the City's prohibitive spacing and density restrictions found at section 1117.01 of the Toledo Municipal Code, which are imposed on group residences for persons with disabilities, unlawfully restrict such group homes from locating in single family residence districts, thus treating dwellings for persons with disabilities disparately than dwellings for persons without disabilities. The United States' complaint alleged that such actions constitute a pattern or practice of discrimination and a denial to a group of persons of rights protected by the Act, within the meaning of 42 U.S.C. § 3614(a).

- 3 -

4.    The City has denied these allegations and all wrongdoing and liability is expressly denied by the City.

## II.    PURPOSES OF SETTLEMENT AGREEMENT AND ORDER

5.    Advanced Living, Family Tree Home, Association for Retarded Citizens, Consumers' Union of Lucas County, the United States, and the City of Toledo (the "parties" herein) desire to fully and finally resolve their disputes, and have entered this Settlement Agreement and Order for the following purposes:

a.    To ensure that the City complies with federal and state fair housing and civil rights laws in their contact with, evaluation of, and decision making concerning residential facilities housing "handicapped persons," as that term is defined in the Fair Housing Act, 42 U.S.C. § 3602(h) (hereinafter referred to as "persons with disabilities").

b.    To ensure nondiscriminatory enforcement of all zoning and building code requirements, including the provision of reasonable accommodations when such accommodations may be necessary to afford persons with disabilities equal opportunity to use and enjoy a dwelling;

c.    To provide injunctive relief in furtherance of the public interest; and

d.    To provide appropriate monetary relief.

Therefore, based on the foregoing representations of the parties, it is hereby ORDERED, ADJUDGED, and DECREED as follows:

- 4 -

## III. JURISDICTION, SCOPE, AND TERM OF ORDER

6. The parties have consented to the entry of this Settlement Agreement and Order. To this end, the parties stipulate and the Court finds that this Court has personal jurisdiction over defendants and jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343, 1367(a), 2201, and 2202.

7. The provisions of this Settlement Agreement and Order shall apply to the City of Toledo, its employees, agents, anyone acting under their direction, and all those acting in concert or participation with any of them.

8. This Settlement Agreement and Order is effective immediately upon it entry by the Court and shall be effective for a period of three (3) years from its date of entry. The Court shall retain jurisdiction of this action for a period of three (3) years after the date of entry of this Settlement Agreement and Order to ensure compliance with its terms.

9. The Court shall have continuing jurisdiction for said three (3) year period over the parties hereto to make any and all such orders as may be proper and necessary to approve, effectuate, consummate, implement, and enforce, on a continuing basis, the terms and conditions of this Settlement Agreement and Order. Any dispute, controversy, question, or claim relating to or concerning the interpretation or enforcement of this Settlement Agreement and Order shall be presented to the Court for resolution if the parties to this Settlement Agreement and Order are unable to reach a satisfactory resolution.

10. Upon final entry of this Settlement Agreement and Order, these actions shall be dismissed subject to the provisions of paragraphs eight (8) and nine (9) above.

## IV. GENERAL NONDISCRIMINATION PROVISIONS

11. The City of Toledo, its employees, agents and successors, and all those acting under their direction, and all those acting in concert or participation with any of them, are hereby prohibited from:

a. Making unavailable or denying a dwelling to any buyer or renter because of a handicap of--

(1) that buyer or renter;

(2) a person residing in or intending to reside in that dwelling after it is so sold, rented, or made available; or

(3) any person associated with that buyer or renter;

b. Refusing to make reasonable accommodations in rules, ordinances, regulations, policies, practices, or services when such accommodation may be necessary to afford persons with disabilities equal opportunity to use and enjoy a dwelling; and

c. Engaging in any conduct which violates the Fair Housing Act, 42 U.S.C. §§ 3601-3619, by discriminating against persons on the basis of handicap in the enactment or enforcement of any ordinance, regulation, or restriction.

- 6 -

## V. INJUNCTIVE PROVISIONS

12. The City of Toledo shall, at the earliest date on which it can lawfully do so, repeal those portions of its zoning ordinance, set out at Attachment A, which impose differential treatment between living arrangements for persons with disabilities and other single family uses permitted under the City's resolutions and regulations. More specifically, the City shall repeal those portions of its Zoning Ordinance which impose spacing, density, and neighborhood contact requirements on group homes for persons with disabilities.

13. In order to promote equal housing opportunity within the City of Toledo, the City shall apply zoning and land use criteria and building codes in a manner which will allow for the making of reasonable accommodations that may be necessary to afford persons with disabilities equal opportunity to use and enjoy dwellings. The City shall further follow an objective, uniform, and nondiscriminatory processing procedure for review of special use permit applications for dwellings to be occupied by or intended or designed to be occupied by persons with disabilities.

14. Within 90 days of the date of this Settlement Agreement and Order, the City of Toledo shall:

> a. Draft, implement, and adhere to objective, uniform, and nondiscriminatory Special Use Permit Application Procedures and Guidelines ("SUP Procedures") that

- 7 -

summarize the Toledo Municipal Code provisions
regarding group homes in plain terms;

b. Distribute copies of the SUP Procedures to all
persons who contact the City concerning residential
facilities for persons with disabilities.

15. The City of Toledo shall consult with counsel for
plaintiffs concerning the SUP Procedures and provide plaintiffs'
counsel with a copy of such procedures prior to their final
adoption. Plaintiffs' counsel shall have 30 days from their
receipt of such procedures to lodge their objections thereto with
counsel for the City. If an objection is made, the parties shall
confer in an effort to resolve their differences. If they are
unable to do so, the dispute may be submitted to the Court for
resolution.

16. If, during the term of this Settlement Agreement and
Order, the City of Toledo proposes to change the special use
permit procedures enacted pursuant to paragraphs 14 and 15, or
proposes to make any other changes to the zoning ordinance which
apply to group homes or other congregate living arrangements,[1]
the City shall first provide the plaintiffs' counsel with a copy
of the proposed changes. Plaintiffs shall have 30 days from the
date the proposed changes are delivered to them in which to
respond to any such proposed change. If no plaintiff objects to
the City's proposal within this 30-day period, the changes shall

[1] This provision does not apply to any changes agreed to by the
parties prior to the filing of this Settlement Agreement and
Order.

- 8 -

be made a part of this Settlement Agreement and Order, and the
changes shall be effectuated. If an objection is made to the
City's proposal by one or more plaintiffs, the changes shall not
be effected. The parties shall confer in an effort to resolve
their differences. If they are unable to do so, the dispute may
be submitted to the Court for resolution. Defendants shall have
the burden of proving that the proposed changes are consistent
with the purpose and terms of this Settlement Agreement and
Order. If the proposed changes apply specifically to group homes
or other congregate living arrangements for persons with
disabilities, the defendants shall bear the burden of proving
that such changes are specifically warranted by the unique and
specific needs and abilities of persons with disabilities and are
directly related to the health and safety of the persons with
disabilities, in addition to proving that such changes otherwise
comply with this Settlement Agreement and Order.

## VI. COMPLIANCE, TRAINING AND NOTIFICATION PROVISIONS

17. Within 30 days of the date of entry of this Settlement
Agreement and Order, the City of Toledo shall provide a copy of
this Settlement Agreement and Order to each elected and appointed
official, officer, and employee who is involved in the
inspection, review, approval, and/or permitting and certification
of housing for persons with disabilities, specifically including,
but not limited to, all inspectors in the Building and Fire
Departments, supervisory personnel in the City's Division of

- 9 -

Building Inspection, and members and staff of the Plan
Commission, City Council, and Board of Building Appeals. Said
persons are listed at Attachment B.

18. Each elected and appointed official, officer, and
employee listed at Attachment B who is hired or retained,
appointed, or otherwise becomes involved in, the inspection,
review, approval, and/or licensing of housing for persons with
disabilities during the term of this Settlement Agreement and
Order shall receive a copy of this Order within 30 days after the
commencement of such agency or employment or assumption of job
duties.

19. Within 90 days of the entry of this Settlement
Agreement and Order, the City of Toledo shall provide training
sessions for all agents and employees listed at Attachment B.
The training shall include at least the following items:   (a)
instruction on the requirements of all applicable state and
federal fair housing laws; (b) a review of the specific
requirements of the City's special use permit procedures and this
Settlement Agreement and Order; (c) instruction in procedures
designed to ensure that disability does not inappropriately enter
into the process of providing inspection and licensing services;
(d) discussion of general issues affecting persons with
disabilities; and (e) a question and answer session to review
each of the foregoing areas.

20. The City of Toledo shall arrange for the foregoing
training session to be provided through an outside entity

knowledgeable in these areas. The presenters may include
attorneys from the City Law Department, but not to the exclusion
of the outside entity. The City shall ensure that attendance to
the greatest extent possible of all applicable elected and
appointed officials, officers, and employees. Affected City
officers and employees shall be required to attend. Affected
elected and appointed officials shall be invited and encouraged
to attend. The expense of the training shall be borne by the
City separate and apart from any funds set aside under the terms
of this Settlement Agreement and Order.


VII. RECORD-KEEPING AND REPORTING PROVISIONS

     21.  Beginning 30 days after the date of entry of this
Settlement Agreement and Order and continuing for the duration of
this Order, the City of Toledo shall preserve and maintain the
following records with respect to the inspection, review,
approval, and/or licensing of housing for persons with
disabilities:

          a.  Copies of all inspection reports for, or citations
          issued regarding, all dwellings occupied by persons
          with disabilities;

          b.  Copies of all applications for special use permits
          for dwellings housing persons with disabilities;

          c.  Copies of all staff reports, memoranda and other
          internal documents regarding applications for special

- 11 -

use permits for dwellings housing persons with
disabilities;

d.   Copies of all written communications provided to
group homes for persons with disabilities;

e.   Tapes and transcripts of all proceedings before the
Plan Commission, City Council, or Board of Appeals
involving or concerning dwellings to be occupied by
persons with disabilities.

22.   The City of Toledo shall make available to plaintiffs
for inspection and copying the records described in this Section
upon reasonable notice.   Plaintiffs shall attempt to minimize any
inconvenience during the inspection and copying of such records.

23.   The City of Toledo shall provide plaintiffs' counsel
with the following reports no later than ten days after the close
of the specific period:

a.   Sixty days from the date of entry of this
Settlement Agreement and Order, the City shall submit a
report indicating the steps taken to date to comply
with Paragraphs 12, and 17 through 21 of this Order;
and

b.   Every six months for the duration of this Order,
the City shall provide a report containing the
following information for each special use permit
application submitted by a dwelling housing persons
with disabilities received during the period:   (1) the
identity and address of the applicant, the date of the

- 12 -

application, and the type of disability in issue, if known; (2) the address of the property, the zoning district, the applicable zoning restrictions; (3) the accommodation requested (if any); and (4) actions taken by the City and the date(s) thereof.

24. The City of Toledo shall use its best efforts to identify and maintain a record of all non-anonymous oral and written complaints concerning the permitting, certifying, and inspecting of housing for persons with disabilities. The City shall notify plaintiffs in writing within 30 days of the receipts by the City of any such complaints and any action taken. This notification shall include full details of the complaint and any action taken by the City, and shall be accompanied by all pertinent documents.

## VIII. **MONETARY RELIEF, ATTORNEYS' FEES AND COSTS**

25. Within 60 days of the date of final entry of this Settlement Agreement and Order, the City shall pay the sum of Fifty-eight thousand dollars ($58,000) to Advanced Living, Inc., the sum of Seventeen thousand five hundred dollars ($17,500) to Family Tree Home, Ltd., the sum of Ten thousand ($10,000) to Association for Retarded Citizens, and the sum of Ten thousand ($10,000) to Consumers' Union of Lucas County, as payment for damages, attorneys' fees and/or costs incurred in connection with their treatment by the City. Said amounts shall be made payable to counsel for named plaintiffs on the plaintiffs' behalf.

- 13 -

## IX.  REMEDIES FOR NON-PERFORMANCE

26.   The parties shall endeavor in good faith to resolve
informally any differences regarding interpretation of and
compliance with this Settlement Agreement and Order prior to
bringing such matters to the Court for resolution.  However, in
the event of a failure by the City of Toledo, whether willful or
otherwise, to perform in a timely manner any act required by this
Order or otherwise to act in violation of any provision thereof,
counsel for plaintiffs may move this Court to impose any remedy ·
authorized by law or equity, including, but not limited to, an
order requiring performance of such act or deeming such act to
have been  performed, and an award of any damages, costs, and
attorneys' fees which may have been occasioned by the City's
violation or failure to perform.

## X.   TIME FOR PERFORMANCE, INTERPRETATIONS, AND DEFINITIONS

27.   The parties shall have the right to seek relevant
modifications of the Settlement Agreement and Order to ensure
that its purposes are fully satisfied.  If the parties are unable
to reach mutual agreement concerning a particular modification,
the burden of proof concerning the propriety of modification
falls on the party so moving.  Any time limits for performance
imposed by the Order may be extended by mutual agreement of the
parties.

## XI.  SETTLEMENT AND DISMISSAL OF CLAIMS

28.  This Settlement Agreement and Order constitutes a compromise of disputed claims and agreement on the terms and payments specified herein does not constitute an admission of liability for any violation of state or federal law.

29.  This Settlement Agreement and Order is in full and final settlement of any and all claims that were asserted or could have been asserted in the complaints filed by Advanced Living, Inc. and Family Tree Home, Ltd., in Case No. 3:97 CV 7245, and HUDALJ Nos. 05-97-0287-8 and 05-97-0720-8, by the Association for Retarded Citizens and the Consumers' Union of Lucas County, Case No. 3:97 CV 7291, and all claims that were asserted by the United States of America, Case No. 3:98 CV 7516.

ORDERED this ____24th____ day of ____March____, 1999

_____
DAVID A. KATZ
UNITED STATES DISTRICT JUDGE

- 15 -

The undersigned consent to the foregoing terms of the Settlement Agreement and Order:

FOR DEFENDANTS:

Edward M. Yosses (0014728)
James G. Burkhardt (0018636)
City of Toledo Dept. of Law
One Government Center
Suite 2250
Toledo, Ohio 43604-2293
(419) 245-1020


FOR PLAINTIFF UNITED STATES:

Robert S. Berman
Clay G. Guthridge
U.S. Department of Justice
Attorneys
Civil Rights Division
P.O. Box 65998
Washington, D.C.   20035
(202) 514-4713


FOR PLAINTIFFS ASSOCIATION FOR
RETARDED CITIZENS and
CONSUMERS' UNION OF LUCAS COUNTY:

Rosemarie A. Barciz (0023119)
Kathleen Brockel
Advocates for Basic Legal Equality
740 Spitzer Bldg.
Toledo, Ohio 43604
(419) 255-0814

FOR PLAINTIFF ADVANCED LIVING,
INC.:

William B. Senhauser(0066236)
J. Mark Finnegan (0032491)
Equal Justice Foundation
520 Madison Avenue, Suite 1026
Toledo, Ohio 43604
(419) 246-1000


FOR PLAINTIFF-INTERVENOR
FAMILY TREE HOME, LTD.:

C. Thomas McCarter (0012986)
Newcomer & McCarter
421 N. Michigan, Suite D
Toledo, Ohio 43624
(419) 255-9100

- 16 -

# SETTLEMENT AGREEMENT AND ORDER
## ATTACHMENT "A"

## Chapters 1117.01 Single Family
## & 1167 Special Uses

**1117.01(i)(7)**

(7) Neighborhood contact. Agencies operating or supervising group homes shall maintain or cause to be maintained a planned continuing contact with the adjacent residents and, as necessary, with the neighborhood with respect to operation of the group home, and shall file a resume of such contact with the Zoning Administrator and the City Plan Commission staff as requested. All operators of group homes shall cooperate in such contact and report.

**1117.01(i)(8)**

(8) Spacing. In order to reduce any negative impact of group homes and similar facilities on the planning community and on the adjacent area, both within a polysided block and as measured in linear fashion along a particular street, the following spacing standards for group homes shall be followed. No group home, or halfway house providing a rehabilitation program for persons re-entering society upon discharge from a mental hygiene institution, or for persons with drug or alcohol problems or for persons on probation or parole for criminal offenses, shall be located within the following distance from another such facility:

A. Within 990 feet within the same block, as bounded by the perimeter streets or other natural or manmade boundary;

B. Within 530 feet outside the block;

C. Within 1,320 feet along the same street, on either side of such street, as measured along the right-of-way line of the street.

**1117.01(i)(9)**

(9) Distribution. The total number of group homes shall be limited within certain planning communities, hereinafter designated, in order to limit the impact of group homes on any one area. The planning communities and housing statistics used shall be those appearing in the Community Renewal Program Report-A Community Description, 1973 Update, and future updates of the statistics approved by the City Plan Commission.

The maximum number of group homes and similar facilities permitted within any one planning community, including pre-existing group homes, halfway houses providing a rehabilitation program for persons reentering society upon discharge from a mental hygiene institution, for persons with drug or alcohol problems, for persons on probation or parole for criminal offenses and nursing homes in residential districts, shall be one-fourth of one percent of the occupied single-family dwelling units within the planning community.

**1167.01(b)(21)**

.The number of group homes and quasi-residential nonconforming uses in an identifiable neighborhood and any other factors which may bear on the need for extra protection to the neighborhood to help achieve and/or maintain orderly land use and stability, shall be taken into account in determining proper locations for group homes.

**1167.01(b)(21)(D)**

D. Standards and Guidelines.

Any home which would violate the requirements for permitted group homes under Section 1117.01 with respect to the number of persons in a home, the number of homes in a planning community or the linear distance requirements between homes, shall be presumed to be detrimental to the character and development of the neighborhood and evidence rebutting such presumption shall be required before a permit may be issued, provided, however, that such presumption shall not apply with respect to the linear distance between multiple group homes on one site being reviewed under this section. The remaining requirements of Section 1117.01 may, when applicable, be considered and may be made in condition of approval.

**1167.01(b)(23)(A)(E) [Temporary care residence - persons recovering from mental illness] Neighborhood Contact**

The temporary care residence facilities, group homes and quasi-residential nonconforming uses in an identifiable neighborhood and any other factors which may affect orderly land use and stability of the neighborhood, shall be taken into account in determining proper locations for temporary care residence facilities.

E. Neighborhood Contact.

Agencies operating or supervising temporary care facilities shall maintain or cause to be maintained a planned continuous contact with the adjacent residents and others in the neighborhood. Such contact shall include at least the following items:

1. Documentation of a serious, substantial effort to organize a neighborhood advisory committee for the facility.

2. A minimum of one scheduled neighborhood informational meeting and four informational contacts shall be made each year.

3. A resume of the above activities and any other significant operational and program activities and incidents shall be transmitted to the Zoning Administrator and the Plan Commission staff at intervals of not more than six months or as requested by the Planning Director.

**F. Standards and Guidelines.**

Any temporary care residence facility, "halfway house," which would violate the requirements for permitted group homes and similar facilities under Section 1117.01, with respect to the total number of facilities in a planning community; or the linear distance requirements between such facilities, shall be presumed to be detrimental to the character and development of the neighborhood and evidence rebutting such presumption shall be required before a permit may be issued. However, such presumption shall not apply with respect to the linear distance between multiple temporary care residence facilities on one site being reviewed under this section.

## 1167.01(b)(26)    [Residential care home for the elderly]

**E. Location and design of facilities.**

Residential care homes for the elderly will be reviewed by the Plan Commission to determine if they are too concentrated in the neighboring area, or too close to the same or similar facilities. Residential care homes will be required to meet the spacing requirements for group homes, nursing homes and similar facilities as set out in Section 1117.01(i) of the Zoning Code if the Plan Commission determines that they are likely to change the residential character of the area. A proposed location in an M-1 District shall be considered with respect to detriment to existing or future industrial development as well as with respect to detriment to the elderly housing proposal and the neighboring area.

**F. Neighborhood contact/monitoring.**

Operators of residential care homes for the elderly in or abutting a Single-Family District or for more than five persons shall maintain or cause to be maintained a planned continuing contact with the adjacent residents and, as necessary, with the neighboring area and shall file a resume of such contact with the Commissioner of Building Inspection as requested. All operators of family homes shall cooperate in such contact and report. The Department of Health and Environment or Division of Building Inspection, with the advice of the local Long-Term Care Ombudsman, may require such further information and/or access to facilities and residents as may be necessary to determine compliance with the Zoning Code including an updated list of caregivers with qualifications and residents together with proof of age. The home or agency shall not disclose the name of any resident except as may be necessary, or disclose any resident's records to any person or agency other than the personnel of the home or the agency for their exclusive use except upon express written consent of the resident or court order unless the disclosure is required by state or federal law.

(Ord. 832-91. Passed 10-29-91.)

## CHAPTER 1121
### Two-family Residence District

## 1121.01(c)(7) [Adult Family Home] Neighborhood Contact

(7) **Neighborhood contract.** Operators of adult family homes shall maintain or cause to be maintained a planned continuing contact with the adjacent residents, and, as necessary, with the neighborhood with respect to operation of the home, and shall file a resume of such contact with the Commissioner of Inspection and the City Plan Commission staff as requested. All operators of family homes shall cooperate in such contact and report.

# CHAPTER 1123

## Multiple Dwelling District

**1123.01(a)(6) H.** [Residential support facility] Neighborhood Contact

H. Neighborhood contact. Agencies operating or supervising residential support facilities shall maintain or cause to be maintained a planned continuing contact with the adjacent residents and as necessary with the neighborhood with respect to operation of the group home. Facilities with more than five placements shall have a minimum of one scheduled neighborhood informational meeting and two general informational contacts each year, and a bimonthly contact with abutting single family or two-family owners and residents.

A resume of the above activities and any other significant operational and program activities and incidents shall be transmitted to the Commissioner of Building Inspection and the Plan Commission staff at intervals of not more than one year, or more often, as requested by the Planning Director. All operators of support facilities shall cooperate in such contact and report. (Ord. 827-91. Passed 10-29-91.)

I. Spacing. In order to reduce any possible negative impact of residential support homes, apartments and similar facilities (pre-existing group homes, temporary care residence facility or halfway houses providing a rehabilitation program for persons re-entering society from a mental health institution, for persons with drug or alcohol problems, or persons on probation or parole for criminal offenses and nursing homes in a residential district) on the planning community and on the adjacent area, both within a polysided block and as measured in linear fashion along a particular street, residential support homes and apartments shall be included within the spacing standards for group homes in Section 1117.01.

J. Distribution. The total number of residential support facilities shall be limited within certain planning communities by being included in the existing distribution computation for group homes and temporary care residence facilities or halfway houses required by Section 1117.01, in order to limit the impact of such homes on any one area.

WHEREAS, the City of Toledo ("City") has reached agreement with Advanced Living, Inc., Family Tree Home, Ltd., Association of Retarded Citizens, Consumers' Union of Lucas County, and the United States of America, plaintiffs in various actions brought in the United States District Court for the Northern District of Ohio ("plaintiffs") in settlement of those claims; and

WHEREAS, as part of that agreement, the City has committed to repeal those portions of its zoning ordinance, set out at Attachment A, that impose differential treatment between living arrangements for persons with disabilities and other single family uses permitted under the City's Zoning and Planning Code (T.M.C. Part 11); and,

WHEREAS, the agreement further provides for a process for the City to change that zoning ordinance as it applies to group homes or other congregate living arrangements, which includes notice to plaintiffs' counsel and a period and process for objection thereto; and,

WHEREAS, the City is desirous upon now substituting new neighborhood contact provisions, spacing requirements in terminology in the Zoning and Planning Code to which plaintiffs have no objection.

NOW, THEREFORE, it is acknowledged and agreed by the City and plaintiffs as follows:

1. THE NEIGHBORHOOD CONTACT PROVISIONS FOUND AT T.M.C. §§1117.01(i)(7), 1121.01(c)(7), 1123.01(a)(6)H, 1167.01(b)(23)(e), and 1167.01(b)(26)F REQUIRING OPERATORS OF GROUP HOMES TO MAINTAIN PLANNED

CONTINUING CONTACT WITH ADJACENT RESIDENTS AND THE NEIGHBORHOOD, SHALL BE REVISED TO MAKE SUCH CONTACT PERMISSIVE, AND ENCOURAGED, BUT NOT MANDATORY. THE REQUIREMENTS THAT A RECORD OF SUCH CONTACT BE FILED WITH THE CITY PLAN COMMISSION SHALL BE REMOVED.

    2.    THE SPACING REQUIREMENTS FOUND AT T.M.C. §§1117.01(i)(8), 1123.01(a)(6)I, 1167.01(b)(23)(F), and 1167.01(b)(26)E SPECIFYING THE MINIMUM DISTANCE BETWEEN ANY TWO DWELLINGS USED FOR CONGREGATE LIVING ARRANGEMENTS AMONG NON-RELATED PERSONS WITH DISABILITIES, INCLUDING A "GROUP HOME" AND ANOTHER "GROUP HOME", OR "TEMPORARY CARE RESIDENCE", OR "HALFWAY HOUSE", OR "ADULT FAMILY CARE HOME", OR DRUG OR ALCOHOL REHABILITATION FACILITY, OR A SIMILAR GROUP HOME TYPE FACILITY FOR PERSONS WITH DISABILITIES, SHALL BE AMENDED TO REQUIRE FIVE HUNDRED FOOT (500') DISTANCING.

    EXCEPTIONS TO THE FOREGOING SPACING REQUIREMENTS SHALL CONTINUE TO BE AVAILABLE THROUGH THE SPECIAL USE PERMIT PROCESS.

    3.    SPACING REQUIREMENTS EQUAL TO OR IN EXCESS OF THE FIVE HUNDRED FOOT PROVISION ABOVE SHALL BE ENACTED OR MAINTAINED FOR OTHER DWELLINGS INTENDED TO BE USED AS CONGREGATE LIVING ARRANGEMENTS AMONG NON-RELATED PERSONS WITHOUT DISABILITIES, INCLUDING, WITHOUT LIMITATION, FUNCTIONAL FAMILIES OF PERSONS WITHOUT DISABILITIES AND CRIMINAL PROBATION OR PAROLE HOUSES.

    4.    THE DENSITY OR DISTRIBUTION LIMITS SPECIFYING THE TOTAL NUMBER OF GROUP HOMES AND SIMILAR FACILITIES FOR PERSONS WITH

DISABILITIES WITHIN ANY PLANNING COMMUNITY SHALL BE ELIMINATED.

5.    THE TITLES USED IN THE TOLEDO MUNICIPAL CODE FOR THE FACILITIES

SPECIFIED IN PARAGRAPH 9, ABOVE, SHALL BE CHANGED TO THE TITLES USED IN

THE OHIO REVISED CODE FOR SUCH FACILITIES TO ALLAY CONFUSION OVER THEIR

APPLICABILITY (E.G. T.M.C. DESIGNATION OF "RESIDENTIAL CARE HOME FOR

ELDERLY" AND SUB-DESIGNATIONS TO BE CHANGED TO O.R.C. TITLE "ADULT CARE

FACILITY" AND SUBTITLES OF "ADULT FAMILY HOME" AND "ADULT GROUP HOME".)


The undersigned consent to the entry of this Decree:

FOR DEFENDANTS:

Edward M. Yosses (0014728)
James G. Burkhardt (0018636)
City of Toledo Dept. of Law
One Government Center, Suite 2250
Toledo, Ohio 43604-2293
(419) 245-1020

FOR THE PLAINTIFFS:

William B. Senhauser (0066236)
J. Mark Finnegan (0032491)
Equal Justice Foundation
520 Madison Avenue, Suite 1026
Toledo, Ohio 43604
(419) 246-1000

FOR THE UNITED STATES:

Robert S. Berman
Clay G. Guthridge
~~Frederick D. Rivera~~
U.S. Department of Justice
Attorneys
Civil Rights Division
P. O. Box 65998
Washington, D.C. 20035
(202) 514-4713

FOR PLAINTIFF-INTERVENOR:

C. Thomas McCarter (0012986)
Newcomer & McCarter
421 N. Michigan, Suite D
Toledo, Ohio 43624
(419) 255-9100

FOR A.R.C./C.U.L.C.:

_____

Rosemarie A. Barciz (0023119)
Kathleen Brockel
Advocates for Basic Legal
        Equality
740 Spitzer Bldg.
Toledo, Ohio  43604
(419) 255-0814