# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | |
|---|---|
| **MORETHA HARDING, et al.** ) | Case No 3:06CV684 |
| Plaintiffs, ) | CHIEF JUDGE JAMES G. CARR |
| vs. ) | |
| **CITY OF TOLEDO, et al.** ) | |
| Defendants. ) | |

### DEFENDANTS CITY OF TOLEDO AND MAYOR CARLETON FINKBEINER'S MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT

Now come Defendants, City of Toledo and Mayor Carleton Finkbeiner, by and through counsel, and respectfully move this Court for an Order, pursuant to Rule 56 of the Federal Rules of Civil Procedure, granting summary judgment on all claims asserted against Defendants in Plaintiffs First Amended Complaint. The Memorandum in Support herein incorporates by reference all memoranda, pleadings, briefs, testimony and exhibits previously filed or submitted herein, or admitted into evidence at the hearing on injunctive relief on April 4, 2006.

**WHEREFORE**, pursuant to Fed. R. Civ. P. 56, there being no genuine issues of material fact and said Defendants being entitled to judgment as a matter of law, Defendants respectfully move this Court for an Order dismissing with prejudice Plaintiffs Complaint for the reasons more fully explained in the following Memorandum.

Respectfully submitted,

JOHN T. MADIGAN, ACTING LAW DIRECTOR

<u>/s/ Mark S. Schmollinger</u>
Mark S. Schmollinger, Senior Attorney
Counsel for Defendants City of Toledo
and Mayor Carleton Finkbeiner

**MEMORANDUM IN SUPPORT**

**I. STATEMENT OF THE CASE**

On April 10, 2006, Plaintiffs, Moretha Harding, Timothy Miller, Dana Howey, and Gerald Oakes filed an amended Complaint in the United States District Court for the Northern District of Ohio, Western Division. Named as defendants, among others, were the City of Toledo and Mayor Carleton Finkbeiner in his official capacity. The Court held a hearing on Plaintiffs' Motion for Preliminary Injunctive Relief on April 4, 2006, at which time testimony was taken and evidence submitted by the parties. On June 6, 2006, the Court denied the requested injunctive relief. (See Doc. 38, Memorandum Order.)

**II. UNDISPUTED MATERIAL FACTS**

The facts pertaining to Defendants City of Toledo and Mayor Carleton Finkbeiner are undisputed. The City has a zoning ordinance requiring at least 500 feet between group homes. Plaintiff Harding operates a group home on Talmadge Road and another on Graceway Avenue. The two homes are within 500 feet of each other. Co-Defendant Doukides Properties owns the Talmadge Road home and leases it to Harding. Neighbors complained about the Talmadge Road home. This prompted Toledo officials to investigate and ultimately charge Doukides Properties on April 27, 2005 with a misdemeanor violation of the Toledo Municipal Code Ordinance § 1117. Doukides plead no contest on December 9, 2005.

The Toledo Housing Court postponed imposing sanctions pending further proceedings.

In response to the City's actions, Doukides Properties instituted eviction proceedings against the Plaintiffs. On March 28, 2006, a temporary restraining order was granted to prevent Doukides Properties from engaging in any proceeding or actions to evict the Plaintiffs from the home at 3842 Talmadge Road. Doukides Properties maintained that the only reason it attempted to evict the Plaintiffs was because of the City's enforcement of the 500-foot spacing requirement applicable to group homes.

### III. LAW AND ARGUMENT

#### A. SUMMARY JUDGMENT STANDARDS

The standards governing summary judgment motions under Fed. R. Civ. P. 56(c) are well-established. Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Id. While "the inferences to be drawn from the underlying facts contained in [the pleadings and depositions] must be viewed in a light most favorable to the party opposing the motion," *U.S. v. Diebold, Inc.* (1962), 369 U.S. 654, 655, the adverse party "may not rest upon mere allegations or denials of his pleadings, but must set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.* (1986), 477 U.S. 242, 256. However, even a favorable view of the facts and inferences does not relieve the nonmoving party of his responsibility "to go beyond the pleadings "in opposing an otherwise properly-supported motion for summary judgment." *Celotex Corp. v. Catrett* (1986), 477 U.S. 317, 324. Summary judgment must be entered "against the party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id.

at 323. Once the moving party identifies record evidence that demonstrates the absence of a genuine issue of material fact, the burden of production then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine [material] issue" necessitating a trial on the merits. *Anderson*, supra, at 250. General averments or conclusory allegations in an affidavit, however, do not create specific factual disputes for summary judgment purposes. See *Lujan v. National Wildlife Fed.* (1990), 497 U.S. 871, 888-9. Furthermore, unsworn statements and affidavits composed of hearsay or nonexpert evidence "do not satisfy Rule 56(e) and must be disregarded." See *Dole v. Elliott Travel & Tours, Inc.* (6th Cir. 1991), 942 F.2d 962, 968-69. Nor may a party "create a factual issue by filing an affidavit, after a motion for summary judgment has been made, which contradicts . . . earlier deposition testimony." *Reid v. Sears, Roebuck & Co.* (6th Cir. 1986), 790 F.2d 453, 460 (citing *Biechele v. Cedar Point, Inc.* (6th Cir. 1984), 747 F.2d 209, 215)).

Finally, "[o]nly disputes over facts that might affect the outcome of the suit under governing law" are pertinent in ruling on the motion. *Anderson*, supra, at 248. *Nonmateial* facts will not be considered. There must be more than the "mere existence of a scintilla of evidence in support of the plaintiff's position[;] there must be evidence on which the jury could reasonably find for the plaintiff." Street v. J.C. Bradford & Co. (6th Cir. 1989), 886 F.2d 1472, 1477 (quoting *Anderson*, supra, at 252).

### B. PLAINTIFFS' FEDERAL CLAIMS

In their Amended Complaint, Plaintiffs allege that by enforcing the zoning code's 500-foot spacing requirement Defendants violated the Fair Housing Amendments Act of 1988, the Rehabilitation Act of 1974, the Civil Rights Acts of 1981, the Americans with Disabilities Act, the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution, 42 U.S.C.

§1983, and Ohio Revised Code §4112. However, Plaintiffs' claims all fail for essentially the same reasons as previously expressed by the Court in its ruling denying injunctive relief. The City's 500-foot spacing requirement for adult group homes is a reasonable distancing requirement, and Plaintiffs cannot show that its enforcement against co-Defendant Doukides Properties discriminates against individuals with disabilities or violates their constitutional or federal statutory rights.

### 1. **PLAINTIFFS' CLAIMS UNDER THE FAIR HOUSING ACT, THE REHABILITATION ACT, THE AMERICANS WITH DISABILITIES ACT, AND THE EQUAL PROTECTION CLAUSE**

Ohio Revised Code §3722.03(D)(1) expressly authorizes enactment of ordinances limiting the spacing of adult family homes. Toledo Municipal Code §1104.1001 provides that "group living facilities" (as defined in TMC §1116.0220) "must be at least 500 feet from a site with any other Group Living Facility." TMC §1116.0220 defines "group living":

> Group Living
> Residential occupancy of a structure by other than a Household where units or quarters do not each have its own kitchen facilities . . .
>
> (A) Adult Family Home
> A state-licensed home or facility that provides accommodations to three to five unrelated adults and supervisions and personal care services to at least three of those adults. Revised Code § 3722.01(A)(1).

Plaintiffs claim that they are exempt from the group living provisions because of TMC §1115.0906, which states:

> Living arrangements for persons with a "handicap" and/or "disability" as those terms are defined by the Fair Housing Amendments Act of 1988 (42 U.S.C. § 3601, *et seq.*) and the Americans with Disabilities Act of 1990 (42 U.S.C. §1201, et seq.) *will be presumed to be a household*. (Emphasis added.)

If the home on Talmadge Road were found to be a household, the 500-foot distance requirement would not apply.

5

However, the presumption that individuals with disabilities living together is a household is a rebuttable presumption. This presumption can be overcome by proof that the home is a state-licensed group living facility. The presumption of a household will prevail only when there is no evidence, such as a state license for an adult group home, to rebut the presumption. In this case, Harding is running a state-licensed group home in order to provide supervision and personal care to persons living with disabilities. Harding admitted at the April 4th hearing that without the license she could not operate the facility and her residents would have to reside elsewhere. This would occur regardless of the 500-foot rule. Thus, TMC §1116.0220(A) applies to the home on Talmadge Road and it is not exempt from the 500-foot restriction.

Plaintiffs also argue that the City has failed to reasonably accommodate them as required by the Fair Housing Act. The FHAA requires accommodation if such accommodation is: 1) reasonable, 2) necessary, and 3) gives disabled people the equal opportunity to use and enjoy a dwelling. 42 U.S.C. §3604(f)(3)(B). Plaintiffs have the burden to show the accommodation sought is reasonable. *Oconomowoc Residential Programs, Inc. v. City of Milwaukee* (7th Cir. 2002), 300 F.3d 775, 783. "'Equal opportunity' means the opportunity [] to live in a residential neighborhood." Id.

Disabled people in Toledo have the same opportunities to live in group homes as non-disabled people do. The municipal zoning provisions at issue apply to all types of group homes: the definition of "adult family home" does not require the residents to be disabled, only that at least three of the unrelated adults in the facility receive "supervision and personal care services." See TMC §1116.0220. Therefore, the City's zoning provisions do not target facilities that house *only* persons with disabilities.

Additionally, the accommodations sought by Plaintiffs are not necessary to give disabled persons the opportunity to live in residential neighborhood. Those who do not need to live in an adult-care facility may live in any residential home in Toledo. There are those who do require the supervision and personal care that a group home offers and "[w]hen a zoning authority refuses to reasonably accommodate these small group living facilities, it denies disabled persons and equal opportunity to live in the community of their choice." *Oconomowoc Residential Programs*, 300 F.3d at 784. However, before 1999, the City's spacing requirement for group homes in its zoning code was 990 feet. This distance was reduced to 500 feet as a consequence of a settlement agreement with, among others, counsel for Plaintiffs in this case (ABLE). The 500-foot distance requirement is a reasonable one, having been judicially validated through the agreement approved by Judge Katz in 1999. (See Doc. 9, City's Memorandum in Opposition to Injunctive Relief, Ex. C attached thereto in Appendix, *Advanced Living Inc. v. City of Toledo, et al.*.)

Larger buffer zones with greater distancing requirements have been found to be invalid. See *Larkin v. State of Michigan Dept. of Soc. Servs.* (6th Cir. 1996), 89 F.3d 285, 291 (invalidating a 1,500-foot spacing requirement for group homes for mentally retarded adults); *Oconomowoc Residential Programs, Inc.*, 300 F.3d at 787 (2,500-foot spacing requirement for adult care facilities for disabled people is invalid). The City's 500-foot requirement is much less stringent than those found to be invalid. In approving the 500-foot spacing rule, it may be presumed that Judge Katz took into account these earlier decisions and the distances that had been invalidated by other courts. Further, through the authority granted to municipalities under R.C. §3722.03(D)(1) to limit the "excess concentration" of such facilities, the 500-foot rule

applies to licensed group homes providing for the care of the residents, *not* to individuals with disabilities.

The City has a legitimate interest in regulating the location, number and proximity of these commercial group homes in residential areas. Despite Plaintiffs' assertion of a "laundry list" of federal statutory and constitutional claims, the 500-foot distancing requirement is a reasonable means to accomplish this goal. It is entitled to a presumption of validity, absent a ruling from the Sixth Circuit that explicitly holds otherwise.

### 2. **PLAINTIFFS' CLAIM UNDER 42 U.S.C. §1983**

In their Eighth Cause of Action, Plaintiffs assert that the City's enforcement of its 500-foot rule against Defendant Doukides through a criminal prosecution in the Toledo Municipal Housing Court violated their statutory and constitutional rights, and therefore the City is liable as a municipality under 42 U.S.C. §1983.

Here, both the City and Mayor Finkbeiner in his official capacity are named as defendants. Because suits against public officials in their official capacity are tantamount to suits against the government entity itself, the municipality and the official-capacity defendants are treated as one. *Kentucky v. Graham* (1985), 473 U.S. 159. In a §1983 action, the plaintiff must show a deprivation of a federal constitutional or statutory right by a person acting under color of law. See *Collins v. City of Harker Heights* (1992), 503 U.S. 115, 120-21. There is no question that the City's enforcement of its 500-foot rule against the property owner (Doukides) meets the "under color of law" element. However, the Plaintiffs cannot show that by doing so the City violated any of *their* constitutional or statutory rights.

In the first place, the Plaintiffs have no standing to raise arguments that Doukides itself could have, and should have, made either to this Court at the injunctive-relief hearing or to

Housing Court Judge McConnell during the municipal criminal case. In point of fact, Doukides entered a "no contest" plea to the charge of violating the City's zoning code pertaining to group homes. (See Toledo Municipal Code §1117.01.)

Secondly, in this Court's Order of June 6, 2006 (Doc. 38), the Court has already ruled that the impact of the City's enforcement of its zoning code on Plaintiff Harding's licensed operation at 3842 Talmadge Road did not violate Plaintiffs' rights under the FHAA, the Rehabilitation Act of 1974, the Civil Rights Act of 1981, the ADA, or the Fourteenth Amendment's Equal Protection Clause. As the Court is aware, §1983 is not an independent source of federal constitutional or statutory rights, but simply a means of enforcing rights found elsewhere. See *Baker v. McCallan* (1979), 443 U.S. 137, 144, n.3; *Day v. Wayne County Bd. of Auditors* (6th Cir. 1984), 749 F.3d 1199, 1202. Since the Plaintiffs have not identified by record evidence how the City is violating any other statutory or constitutional right by enforcement of the 500-foot rule, their conclusory assertion that the same enforcement action also violates 42 U.S.C. §1983 must fail.

Further, this Court noted in its June 6th ruling denying injunctive relief that Ohio law grants authority to municipalities to enact zoning ordinances that "limit the excessive concentration of adult family homes and adult group homes required to be licensed as adult care facilities." See R.C. §3722.03(D)(1). Plaintiffs have not claimed or argued that this statute is unconstitutional or that it otherwise violates some provision of federal law. Again, the specific 500-foot distancing requirement selected by the City came as a result of previous litigation in 1999, which is undisputed, and with which this Court is already familiar through prior briefing. (See Doc. 22, Defendants' Supplemental Memorandum/Reply Brief in Opposition to Plaintiffs' Motion for Injunctive Relief.)

Judge Katz' Order of March 24, 1999 constitutes a *judicially-approved* spacing requirement for adult group homes under the City's current zoning code. Despite the plethora of previous briefing on this issue, Plaintiffs have not cited as authority for their claims *any* Sixth Circuit case that holds that a similar 500-foot spacing requirement in a municipal zoning code applicable to group homes violates either the FHAA or the ADA.

Accordingly, Defendants City of Toledo and Mayor Finkbeiner are entitled to summary judgment on Plaintiffs' §1983 claim, as well as the underlying federal claims on which it is bootstrapped.

### C. **PLAINTIFFS' CLAIMS UNDER OHIO REVISED CODE SECTION 4112.02**

In their Seventh Cause of Action, Plaintiffs assert that the City's enforcement of its 500-foot rule against Defendant Doukides violates Ohio Revised Code §4112.02(H)(1) and (H)(19). The former subsection, (H)(1), pertains to prohibiting the denial of "housing accommodations" because of disability. The latter such section, (H)(19), pertains to refusal to provide reasonable housing accommodations to persons with disabilities.

On its face, R.C. §4112.02(H)(1) appears to apply to persons providing "housing accommodations" to persons with disabilities, *not* to governmental entities enforcing zoning laws that impact particular types of housing accommodations or residential properties. Regardless, under R.C. §4112.02, a city does not violate fair-housing laws by refusing to grant the multiple, substantial variances in its zoning code needed to allow transitional housing for mentally-ill persons on property zoned for semi-industrial use. See *Eppler v. Cleveland* (2001), 142 Ohio App.3d 91, 98-100 (*held*: City's enforcement of its 200-foot spacing requirement between residential and industrial property does not deny equal-housing opportunity, does not constitute failure to reasonably accommodate, and is not discriminatory). Similarly, the City's

10

enforcement here of its 500-foot rule for group homes cannot violate §4112.02(H)(1) or (H)(19), since R.C. §3722.03(D)(1) explicitly authorizes municipalities to enact and enforce zoning laws that restrict the "excessive concentration" of adult family homes.

As was made clear during the testimony at the hearing on injunctive relief, there is no dispute that Plaintiff Harding operates a state-licensed adult family home at 3842 Talmadge Road in Toledo. The 500-foot spacing rule applies to *all* licensed adult family homes operating within the City, and to the property owners thereof (Doukides). Since the City's enforcement of the 500-foot rule is not a "denial" of housing accommodations to the disabled, *Eppler*, supra, the City cannot be liable under §4112.02(H)(19) for failing to "accommodate" the Plaintiffs by not enforcing the 500-foot rule against Doukides. Where the underlying enforcement action is not discriminatory, there can be no liability on the City for its alleged failure to "accommodate" the Plaintiffs by refusing to ignore Doukides' obvious zoning violation. *Eppler*, supra.

Accordingly, since nothing in R.C. §4112.02, nor any Ohio case interpreting it, prohibits enforcement of the City's 500-foot rule against Doukides (see *Eppler*, supra), Plaintiffs' sole state-law claim is completely without merit.

### IV. CONCLUSION

Based on the foregoing law and arguments, Defendants City of Toledo and Mayor Finkbeiner are entitled to summary judgment on the claims set forth in Plaintiffs' Complaint and to dismissal thereof with prejudice.

Respectfully submitted,

JOHN T. MADIGAN,
ACTING DIRECTOR OF LAW

/s/ Mark S. Schmollinger
Mark S. Schmollinger (0025239)
Senior Attorney
City of Toledo Department of Law
One Government Center, Suite 1710
Toledo, Ohio 43604
Telephone: 419-245-1020
Facsimile: 419-245-1090
email: mark.schmollinger@toledo.oh.gov

## **CERTIFICATION**

I hereby certify that the foregoing Motion for Summary Judgment with Memorandum in Support was filed electronically on this 15th day of September, 2006. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system. A copy of said Motion was also sent by regular U.S. Mail service to counsel for Resident Plaintiffs, Richard Alston, Esq., ABLE, 520 Madison Ave., Suite 740, Toledo, Ohio 43604; counsel for Plaintiff Moretha Harding, Janet E. Hales, Esq., 900 Adams St., Toledo, Ohio 43624-1508; counsel for Plaintiff Rosalie Reynolds, Joseph P. Jordan, Esq., 4127 Monroe St., Toledo, Ohio 43606-2063; and counsel for Doukides Properties, LLC, Jerome R. Parker, Esq., 806 Madison Ave., Suite 930, Toledo, Ohio 43604-1128, on this 15th day of September, 2006.

/s/ Mark S. Schmollinger
Mark S. Schmollinger